The summons was issued 3 December, 1892. It appears from the pleadings that in May, 1892, the plaintiff shipped from Edenton to the defendants in Richmond, Va., a certain quantity of fish in barrels and kegs to sell in that market on commission. The action is for damages by reason of defendants' failure to exercise due diligence and care in selling, and in failure to sell. Some of the fish had been sold and some were in defendants' hands when the summons *Page 25 
issued. At the trial the plaintiff had judgment and the defendants appealed.
The only exceptions are to the second, fifth and sixth sections of his Honor's charge to the jury.
The plaintiff introduced evidence to show that the fish were good and were "number one," and that the defendants were negligent and careless in selling and failing to sell. The defendants introduced evidence to show the contrary in each particular. On 6 June, 1892, the plaintiff wrote to defendants as follows: "Please sell fish shipped by me some time ago and now in your hands. Do so please at once, and oblige, Yours truly, J. W. Spruill." The whole evidence was (36) submitted to the jury and his Honor charged:
1. If defendant exercised proper care and diligence to sell the fish in the condition in which they were received, they performed their duty. The burden is upon the plaintiff to show a want of diligence, of which they must satisfy the jury.
2. That the defendants were bound to sell the fish of the plaintiff within a reasonable time after they were received and for the best market prices they would bring in the Richmond market, and after the plaintiff's letter of 6 June, 1892, it was the duty of defendants to sell at once for the best market price.
5. If, however, they were instructed to sell at once by the plaintiff, it was their duty to sell as soon as they could sell, although they may have thought better prices could be obtained by waiting.
6. As to the proper care and handling of the goods intrusted to them for sale, for their own protection in business they had the right to know the quality and condition of the goods (the fish) before offering them for sale. Although not bound by law to have the fish inspected, they had the right to do so; but in having the inspection made, it was their duty to use every reasonable care, such as men of ordinary prudence in their lines of business would use in the management of their own goods, their own fish, but they did not have the right to procure a careless or incompetent inspector, or make a careless inspection and to make an untrue report of the condition of the fish; and if they employed such a careless or incompetent inspector, and he made a careless and untrue report, and carelessly or corruptly made a wrong classification of the plaintiff's fish, reporting fish as second class, which ought to have been reported as first class, and thereby the sale of the plaintiff's fish was injured and they were made unsalable, the defendants would (37) be liable for such damages as the plaintiff sustained thereby.
The defendants' exception to sections 2 and 5 are in effect that the charge in said sections takes no account of the state of accounts between the parties, nor of the defendants' interest because of their *Page 26 
advancements; and to section 6 that there was no evidence that the inspection and report classifying some of the fish as "number two" nor of carelessness or negligence in selling or not selling, on the part of the defendants.
The issue was for the jury under proper instruction. The defendants examined witnesses to show that the fish were not in good condition and that some were classed "number two" by the inspector chosen by them.
The plaintiff testified that the goods were in good condition when shipped, and introduced one witness who said that on 28 September, 1892, at request of plaintiff, he examined some of the fish and found them in good condition, and that he told defendants they were number one and that he could sell them to a Petersburg broker. Plaintiff also introduced two witnesses, who testified that in September after the fish had been inspected, they received some of the fish at Suffolk, Va., and sold and used some of them, and that they were in good condition. We think there was evidence on both sides fit to go to the jury, and we think that plaintiff's evidence by strong implication tended to show undue attention on the part of the defendants, and we see no error in the charge in the sections to which exceptions were filed. When the fish were received by defendants for sale with general instructions, it was proper and their duty to ascertain the condition and quality of (38) the goods before putting them on the market. They were also invested with a discretion as to the time and manner of selling, provided they acted in good faith and with ordinary diligence.
The defendants' duty, however, was materially changed after 8 June, 1892, when they received an order to sell "at once." They were then bound to sell at once, exercising still due care and prudence in doing so, and if they could not sell on any terms, it was their duty to report that fact to their principal and receive directions. When a factor or broker has received express instructions, he must pursue those instructions strictly, and if he does not, he is responsible to his principal in damages for any loss arising from such disobedience. Russell on Factors and Brokers, Law Lib., vol. 48, marg. page 18. The making the advances was not a condition precedent to the duty of selling under the instruction, 6 June, 1892. Besides, there is no suggestion that plaintiff was insolvent and nonconstat that the defendants could not have collected any balance due them on their account.
Affirmed. *Page 27